```
                 UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT

United States of America    :
                            :
     v.                     :    File No. 1:02-CR-86
                            :
Jonathan Merino             :
```

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 29 and 31)

Petitioner Jonathan Merino has filed a motion to vacate, set aside, or correct his sentence pursuant to the provisions of 28 U.S.C. § 2255. (Papers 29 and 31). In his motion, Merino claims: (1) that his attorney should have presented certain exhibits at sentencing, (2) that his sentence violated the Supreme Court's holdings in Blakely v. Washington, 124 S. Ct. 2531 (2004) and United States v. Booker, 125 S. Ct. 738 (2005), and (3) that he is not receiving the psychiatric treatment recommended by the Court. (Paper 31). Merino has also filed an amendment to his motion, claiming that the Court sentenced him based upon a misunderstanding about the status of his criminal cases in other jurisdictions. (Paper 35). The amendment also states his desire for a transfer to St. Francis House in Boston, Massachusetts. Id.

The government has opposed Merino's motion, arguing

that he has failed to provide evidence of ineffective counsel, that <u>Blakely</u> and <u>Booker</u> are not retroactive, and that the cases that were allegedly pending from other jurisdictions did not affect his sentence.  With respect to Merino's claims about his psychiatric care and placement, the government states that those issues are within the discretion of the Bureau of Prisons and takes no position.  For the reasons set forth below, I agree with the government and recommend that Merino's claims under § 2255 be DENIED.  With respect to Merino's psychiatric care and placement, I recommend that the Court construe those claims as brought pursuant to § 2241, and dismiss them without prejudice for lack of jurisdiction.

Factual Background

The government reports that Merino was first charged with bank fraud in 1999.  After entering a guilty plea to that charge, he was sentenced to 33 months in prison to be followed by five years of supervised release.  He was released from federal custody on April 3, 2002, but soon thereafter failed to report to his probation officer.  A warrant was issued for his arrest, and he was

subsequently arrested in Indiana.

Prior to his arrest in Indiana, Merino opened a bank account at Chittenden Bank posing as a local psychiatrist.  Before the bank was able to close the account due to suspicion of fraud, Merino wrote several checks to local merchants.  Consequently, upon his return to Vermont, Merino was again indicted on charges of bank fraud and forgery.  On December 6, 2002, Merino entered a guilty plea to one count of bank fraud.

At sentencing, the Court found that Merino had convictions resulting in 33 points and a Criminal History Category of VI under the Federal Sentencing Guidelines.  The Pre-Sentence Investigation Report ("PSR") also showed charges pending against him in four other states.  Merino received no additional points for these allegedly pending charges.  The Court did, however, grant the government's motion for upward departure based upon a likelihood of recidivism, and sentenced Merino to 41 months in prison, to be followed by five years of supervised release.  Merino received an additional sentence of six months on the underlying case.  He did not appeal his conviction and sentence.

Procedural History

Merino initially filed his "motion for writ of habeas corpus" on September 7, 2004.  (Paper 29).  His motion, however, failed to state any grounds for relief, asserting instead that he was "attempting to file a 2255 with the honorable [court]."  Consequently, this Court issued an order requiring Merino to amend his motion by adding substantive claims.  (Paper 30).

On September 20, 2004, Merino filed a new petition in which he claimed ineffective assistance of counsel, Blakely and Booker violations, and inadequate psychiatric care as set forth above.  (Paper 31).  On November 15, 2004, Merino filed an "amendment" to his petition in which he stated his need for transcripts and exhibits, and that he planned to submit psychiatric information from the Bureau of Prisons.  (Paper 32).  On March 8, 2005, he filed a second amendment claiming that, at sentencing, the Court had improperly considered several cases from other jurisdictions that were allegedly pending against him.  Merino also expressed his desire to be transferred to Boston (Paper 35).

The government filed its response to Merino's

various filings on April 4, 2005.  (Paper 38).  On May 24, 2005, Merino moved to withdraw his motion, claiming that he would pursue his claims after he was released. (Paper 40).  The Court immediately issued an order informing Merino that a withdrawal might prejudice his ability to bring a subsequent § 2255 motion, and asking him to confirm his desire to withdraw his motion.  (Paper 41).  On May 31, 2005, Merino filed a motion to withdraw his initial motion to withdraw.  (Paper 42).  Merino also reiterated his need for transcripts and exhibits.  Id. On June 2, 2005, the Court allowed Merino to withdraw his withdrawal motion, ordered the Clerk of Court to provide the parties with the transcript of Merino's sentencing hearing, and ordered the government to provide Merino and the Court with copies of the exhibits used at sentencing. (Paper 43).  The government filed copies of the requested exhibits with the Court on June 13, 2005, and certified that copies were also sent to Merino on June 10, 2005. (Paper 45).  Copies of the sentencing transcript were mailed to the parties on June 17, 2005.

On June 30, 2005, Merino moved for an extension of time in which to amend his motion.  (Paper 48).  Having

initially granted Merino 30 days from the date the transcript was mailed to amend his motion, the Court allowed Merino an additional 20 days in which to file his amendment.  (Paper 49).  Given that the transcripts were mailed on June 17, 2005, Merino's amendment was due no later than August 8, 2005.  Over seven weeks have passed since that date, and the Court has not received anything further from Merino.  Accordingly, the Court should move forward with Merino's motions as they currently stand.

## Discussion

Section 2255 is intended to remedy fundamental defects in a criminal prosecution.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  A court may grant relief under § 2255 only for constitutional errors, lack of jurisdiction or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice.  See Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996).  The Supreme Court has defined a miscarriage of justice as a claim of actual innocence.  See United States v. Olano, 507 U.S. 725, 736 (1993).  Absent exceptional circumstances such as a miscarriage of justice, nonconstitutional or

nonjurisdictional questions are generally foreclosed to a § 2255 petitioner if not raised on direct appeal unless the petitioner can show cause for and prejudice from his failure to raise the issue on appeal.  See Brennan v. United States, 867 F.2d 111, 120 (2d Cir. 1989).  Ineffective assistance of counsel claims are, however, generally excepted from this cause and prejudice requirement and may be brought for the first time in a § 2255 motion.  See Massaro v. United States, 538 U.S. 500, 504 (2003).

I.  *Blakely* and *Booker* Claims

Merino claims, in summary fashion, that his sentence violated Blakely and what at the time of his filing was the upcoming ruling in Booker.  In Blakely, the Supreme Court held that Washington State's sentencing procedures violated the Sixth Amendment, but declined to opine on the constitutionality of the Federal Sentencing Guidelines.  124 S. Ct. at 2538 n.9.  Subsequently, the Blakely holding was extended to the Federal Sentencing Guidelines in United States v. Booker, 125 S. Ct. 738 (2005), wherein the Court held that the Guidelines "violated the Sixth Amendment to the extent that they

allowed the maximum sentence authorized by a guilty plea or a verdict to be increased based on findings of fact (other than the fact of a prior conviction) made by the judge." Guzman v. United States, 404 F.3d 139, 141 (2d Cir. 2005) (citing Booker, 125 S. Ct. at 755-56).

Here, there is no evidence that Merino's sentence was enhanced in violation of Booker. As the government notes in its opposition, the amount of money involved was "minimal," and thus no enhancements applied. (Paper 38 at 6). It also appears from the record that the length of Merino's sentence was determined in large part by his prior convictions, and would therefore be unaffected by the ruling in Booker.

Furthermore, the Second Circuit has held that Booker does not apply retroactively to cases on collateral review. Id. at 144. Specifically, the Guzman court determined that although Booker established a new rule of constitutional law, the rule was procedural rather than substantive. Id. at 141-42. The Guzman decision held that the rule announced in Booker did not establish a "watershed rule 'implicating the fundamental fairness and accuracy of the criminal proceedings,'" and thus could

not be applied retroactively.  Id. at 142-43 (quoting Schriro v. Summerlin, 124 S. Ct. 2519, 2523 (2004)).

Accordingly, the law in this Circuit is that Booker is not retroactive, "i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker was issued."  Id. at 144.  Similarly, courts in this Circuit have uniformly held that Blakely, which was decided in 2004, may not be applied retroactively.  See Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005) ("[N]either Booker nor Blakely apply retroactively to [petitioner's] collateral challenge" for purposes of second or successive motion); Carmona v. United States, 390 F.3d 200, 202 (2d Cir. 2004) (the Supreme Court has yet to make Blakely retroactive on collateral review); see also Steele v. United States, 2005 WL 704868, at *16 n. 18 (S.D.N.Y. Mar. 29, 2005); Nnebe v. United States, 2005 WL 427534, at *9 (S.D.N.Y. Feb. 22, 2005).  Because Merino's conviction was final prior to either the Blakely or Booker decisions, his request for relief under those rulings should be DENIED.

9

II.  Ineffective Assistance of Counsel

Merino also contends that his attorney was ineffective at sentencing.  He first claims that counsel failed to present certain exhibits.  He does not, however, state what those exhibits were.  The Court has ordered that the exhibits presented at sentencing be reproduced and sent to Merino, and the government has certified that it complied with that request.  The Court has also provided Merino with the sentencing transcript.  Nonetheless, Merino has failed to amend his petition with respect to this claim.

Merino further claims that his attorney should have informed the Court that the PSR erroneously listed cases from other jurisdictions as "pending" against him.  (Paper 35 at 1-3).  The government responds that the cases were in fact pending at the time of sentencing.  The government also argues that the lack of an objection to this portion of the PSR was harmless, since Merino's enhancement for likelihood of recidivism was justified by far more than just the cases he is now contesting.

"[T]he proper standard for attorney performance is that of reasonably effective assistance."  Strickland v.

Washington, 466 U.S. 668, 687 (1984).  The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.  See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).  Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense.  See Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (citing Strickland, 466 U.S. at 687-691).

To satisfy the first prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness.  More specifically, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and the deficient performance so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result."  Strickland, 466 U.S. at 687; see also United States v. DiTommaso, 817 F.2d 201,

11

215 (2d Cir. 1987).  In conducting the ineffective assistance inquiry, a court must maintain a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689.  The court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  See id. at 690.  In evaluating counsel's performance, the court is to look to "an objective standard of reasonableness . . . under prevailing professional norms" and apply this standard in light of all the circumstances in the case.  Id. at 688, 690.

    In evaluating the prejudice component of Strickland, a court must determine whether, absent counsel's error, it is reasonably probable that the outcome of the proceeding would have been different.  See Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 703; Hurel-Guerrero v. United States, 186 F.3d 275, 282 (2d Cir. 1999).

Because Merino has not identified any of the exhibits that he claims should have been introduced at sentencing, the Court should not grant him relief on that claim.  With respect to his claim of errors in the PSR, Merino contends that he had completed his sentences on each of the allegedly pending cases.  "Attorney Beth Mann didn't advise the honorable court that all cases mentioned in the PSI as open cases were in fact closed cases as Defendant went to court on all of these cases while incarcerated in FBOP in 1999, 2000, 2001.  All sentences were satisfied!"  (Paper 35 at 1).  In support of his claim, Merino has attached a Bureau of Prisons printout dated June 6, 2004, listing no detainers against him.  (Paper 35-2, at 1).  As stated above, Merino was sentenced on September 23, 2003.

As the government properly notes in its opposition, a 2004 printout showing no detainers does not prove that there were no cases pending against Merino in 2003.  Indeed, the government asserts that there was no error in the PSR, and that these cases were, in fact, pending at the time of sentencing.  However, even assuming that there was a mistake and that cases were not pending at

13

the time of sentencing, Merino has nonetheless failed to show that he was prejudiced by the alleged error.

The sentencing transcript shows that the Court considered more than just Merino's pending cases in deciding to enhance for likelihood of recidivism.

> I consider [Merino's] criminal history to be agregious [sic] and serious and note the following:  That this is his third federal conviction for bank fraud in approximately seven years.  That his criminal history shows that he has been engaged in similar behavior for the last 30 years which commenced in, when he was age 16.  Specifically I'm finding that he had -- well, his record includes two juvenile convictions and 17 adjudications as an adult. . . . .
>
> I note that he [has] 33 points which is three times the number of points established by The Sentencing Committee in determining what degree of criminal behavior should constitute criminal history category six.
>
> And I also note that the nature of the prior offenses can be considered in determining whether to depart upwardly.  They, the previous convictions include several fraud cases which resulted in a substantial amount of money that he defrauded from various individuals and businesses. . . .
>
> His previous convictions include stealing a car, two escapes, the fraudulent use of a credit card and grand theft.  Certainly these convictions are evidence of similar misconduct.  And in general I feel he's been defrauding people his entire life.
>
> So it seems to me very likely that he will

14

>     continue this type of criminal conduct.  And I
>     feel that an upward departure to have him serve
>     a longer sentence than is called for by the
>     guideline is appropriate.

Sentencing Tr. at 33-35.  In addition to Merino's substantial list of prior convictions, the Court also noted that he had "five pending cases in five different jurisdictions, as well as other arrests which, in which the charges were dismissed."  <u>Id.</u> at 34.

As discussed above, in order to show ineffective assistance of counsel, Merino must demonstrate that "absent counsel's error, it is reasonably probable that the outcome of the proceeding would have been different."  <u>See</u> <u>Mayo</u>, 13 F.3d at 534.  Therefore, Merino must show that without considering the five allegedly pending cases, the Court would not have approved an upward departure.  In light of Merino's extensive criminal history, as outlined by the Court at sentencing, he cannot make such a showing.

Merino's 33 criminal history points alone lent considerable support to an upward departure.  <u>See</u> <u>United States v. Harris</u>, 13 F.3d 555, 558 (2d Cir. 1994) (upward departure upheld where defendant had 27 criminal history points).  Furthermore, the Sentencing Guidelines allow

for a departure where a defendant has an "egregious" criminal record, and permit the court to consider the nature of the prior offenses. U.S.S.G. § 4A1.3. Here, the Court specifically found that Merino's criminal history was egregious, dating back 30 years with multiple convictions for fraud and theft. Moreover, Merino's most recent offense occurred within weeks of his release, indicating that his previous prison term had failed to deter him from engaging in future criminal conduct. Given these facts, the Court should not find that counsel's alleged failure to object to the inclusion of five pending cases in the PSR, and the Court's subsequent consideration of those cases, caused him prejudice. Without a showing of prejudice, the Court cannot find that counsel was ineffective under the <u>Strickland</u> standard, and Merino's request for relief on this ground should be DENIED.

III. <u>Request for Psychiatric Care</u>

Merino's final claim is that the Bureau of Prisons has not provided him with psychiatric treatment as allegedly recommended by the Court. Merino also asks the Court to order his transfer to St. Francis House in

Boston. This portion of Merino's motion concerns the execution of his sentence, and should therefore be brought pursuant to 28 U.S.C. § 2241. See Rickenbacker v. United States, 2005 WL 936933, at *6 (E.D.N.Y. Apr. 23, 2005) ("execution referred to includes matters such as the administration of parole, computation of the sentence, transfers between prisons, and conditions of detention") (citing Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001); Chambers v. United States, 106 F.3d 472, 474-75 (2d Cir. 1997)). If the motion were converted to a § 2241 motion, venue in this Court would be improper, since § 2241 motions must be brought in a court with jurisdiction over the defendant's custodian. See Rumsfeld v. Padilla, 124 S. Ct. 2711, 2727 (2004). Here, the Court's records indicate that Merino is incarcerated in Beaumont, Texas.[1] Therefore, the Court should DENY without prejudice Merino's claims with respect to his treatment in prison, so that he may raise those claims again in a court with jurisdiction over his custodian.

---

[1] In one of his filings, Merino refers to his release date as October 2, 2005. (Paper 35 at 6). Therefore, in the event that the Court adopts this Report and Recommendation, it is not clear that (1) Merino will still be in federal custody, or (2) that Texas will have jurisdiction over his custodian at that time.

See, e.g., Hernandez v. United States, 2005 WL 888165, at *1 (S.D.N.Y. Apr. 15, 2005) (construing motion as brought pursuant to § 2241 and dismissing it for lack of jurisdiction).

## Conclusion

For the reasons set forth above, Merino's motions (Papers 29 and 31) should be DENIED.  To the extent that Merino is asking for relief with respect to the execution of his sentence, the motions should be DENIED without prejudice for lack of jurisdiction.

Dated at Burlington, in the District of Vermont, this 30th day of September, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).